**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Aug 08 2013, 5:22 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**ELIZABETH A. BELLIN**
Elkhart, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**JUSTIN F. ROEBEL**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| TIMOTHY R. THACKER, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 20A03-1212-CR-558 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

### APPEAL FROM THE ELKHART SUPERIOR COURT
The Honorable Charles C. Wicks, Judge
Cause No. 20D05-1109-FD-291

**August 8, 2013**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**BAKER, Judge**

After accompanying some friends to collect refrigerator coils belonging to Dometic, an Elkhart business, for "scrapping," Timothy R. Thacker was arrested and charged with Theft[1] and Receiving Stolen Property,[2] both class D felonies. Following a jury trial, Thacker was convicted on both counts. He now appeals, arguing that insufficient evidence existed to support the jury's verdict on the theft count and that at least one of his convictions must be vacated based on principles of double jeopardy.

We conclude that although the State's witnesses presented at least three different factual scenarios describing the extent of Thacker's involvement, there was sufficient evidence presented for the jury to have concluded that Thacker knowingly exerted unauthorized control over the refrigerator coils with the intent to deprive Dometic of their value. Thus, sufficient evidence existed to support the theft conviction. However, because the State concedes that Thacker's convictions for both theft and receiving stolen property violate principles of double jeopardy, we remand with instructions to the trial court to vacate one of Thacker's convictions and the corresponding sentence.

Accordingly, we affirm in part, reverse in part, and remand with instructions.

FACTS

On September 23, 2011, Thacker and three friends—Christian Ward, Patrick Weaver, and B.L.[3]—were arrested at the home of Christian Ward after they were found

---

[1] Ind. Code § 35-43-4-2(a).

[2] I.C. § 35-43-4-2(b).

[3] Because B.L. is a minor, we will use his initials rather than his full name. See Ind. Admin. Rule 9.

2

by police officers with Dometic refrigerator coils in Ward's garage. After his arrest, Thacker waived his right to remain silent and provided a statement to police. He was subsequently charged with class D felony theft and class D felony receiving stolen property.

A two-day jury trial commenced on October 18, 2012. During the trial, the State's witnesses provided at least three different accounts of the extent of Thacker's involvement in the theft of the refrigerator coils on September 22-23, 2011.

More specifically, Weaver testified that he was with Thacker at Thacker's mother's house on September 23, 2011, when Ward and B.L. arrived and announced that they were going "scrapping." Tr. p. 88. All four young men rode in Ward's vehicle to the edge of the railroad tracks approximately two or three blocks from Ward's home, and at that point, they began walking along the tracks. Weaver waited on the tracks while the others went into the woods, and approximately fifteen minutes later, Ward came "running out of the woods" as if he was "freaked out" about something, and the others followed. Id. at 89-90. Ward and B.L. were each carrying refrigerator coils, and Weaver heard Ward yell that "he saw someone or something like that." Id. at 90. The four young men then walked back to Ward's vehicle, where Weaver helped Thacker load one of the coils into the trunk. When they returned to Ward's home, Ward and B.L. unloaded the coils into Ward's garage, and Weaver told Thacker that he wanted to leave because he "had kind of a suspicion then" that the coils were stolen based on a conversation he heard between Ward and B.L. about "some stuff they had done like a couple of days earlier."

3

Id. at 96. However, the police arrived and arrested all four of them before Weaver and Thacker could leave. Id. at 92.

B.L. testified that on September 22, 2011, he, Ward, and another young man "were looking for stuff to make some money so [they] were just like wandering through the woods and looking for metal to scrap and stuff and broke into some trailers and put some – I don't even know what they're called – into the woods . . . to get them the next day." Tr. p. 103. The following day, B.L., Ward, Thacker, and Weaver rode in Ward's vehicle to a location close to where B.L. and Ward had left the coils, and they all walked along the railroad tracks before Ward and Thacker went into the woods to bring the coils back out to the tracks. When Ward and Thacker returned, they were walking "kind of fast but not really that fast," and each of the four young men helped carry the coils to Ward's vehicle. Id. at 105. Thacker got directly into the vehicle while Ward, Weaver, and B.L. loaded the coils into the trunk, and Ward and B.L. unloaded the coils into Ward's garage when they returned.

The statement that Thacker provided to the police on the date of his arrest was conveyed to the jury through the testimony of Detective Tom DeWitt of the Elkhart Police Department. According to Detective DeWitt, Thacker's statement indicated that he was with Ward on September 22, 2011, when Ward "had come to him and [told him that] he knew where there was some metal [they] could scrap." Tr. p. 123. Thacker went with Ward onto the railroad tracks, but he stayed on the tracks while Ward went into the

4

woods. "A few minutes later there was some yelling[, and Ward] came back and they both left" without any metal to scrap. Id.

Thacker's statement further provided that on September 23, 2011, Thacker was at his mother's house when Ward showed up with B.L. and Weaver, and they all went to the same location where refrigerator coils had been stacked behind a building. Ward "told [Thacker] that the two of them would grab the three that were stacked and the kid could grab the one and they started down the tracks with these items." Id. at 123-24. They walked about eighty yards before "a man on a fork lift then yelled at them to stop, [and] they dropped everything and . . . took off running." Id. at 124. They then went back to Ward's home, where Thacker observed different refrigerator coils in Ward's garage and asked Ward if they were stolen. Although Ward said they were not, Thacker "still figured they were probably stolen." Id.

Other witnesses, including several police officers involved in the theft investigation, an employee of Dometic, and a woman who lived close to where Ward's car was left, provided additional details about the incident. The testimony of these witnesses indicated that the stolen refrigerator coils had been stored in a trailer on Dometic's property near the edge of the woods, and that on September 23, 2011, an employee of a business located next to Dometic observed two white males leaving that storage area with Dometic property at approximately 12:15 p.m. and called the police.

Officer James Peterson responded to Dometic after being dispatched there regarding a theft in progress. Once he was at the scene, Officer Peterson noticed that two

5

different trailers appeared to have been opened recently, and he observed shoe impressions leading into one of the trailers and near an opening in a chain link fence at the edge of Dometic's property. From that point, Corporal Chris Snyder and his canine partner Zantos tracked a scent along the railroad tracks through a wooded area, and a woman whose home abutted the trail told the officers that several boys had just passed by. Zantos continued to track the scent to the intersection of Graywood Street and Superior Street in Elkhart, where four different sets of footprints were observed leading from the woods to the intersection. It was at this location that the scent was lost, but a neighbor told the police that a "junky white car" had been sitting at the intersection and that she recognized the vehicle "as belonging to a Christian." Tr. p. 60.

This information was relayed to dispatch, and the officers were informed that Ward lived at the corner of Graywood and Jackson. Ward's white car and four male suspects, including Thacker, were located at the address provided. After obtaining consent to search the premises, police officers discovered refrigerator coils in Ward's garage. Each of the coils had serial numbers indicating that they belonged to Dometic and looked "brand new." The police officers arrested each of the young men in connection with the theft of the coils.

At the conclusion of Thacker's trial, the jurors returned a guilty verdict on both counts, and Thacker was subsequently convicted of both class D felony theft and class D felony receiving stolen property and sentenced to concurrent terms of eighteen months of

incarceration.  Thacker's counsel asked for the convictions to merge, but the trial court denied this request.  Thacker now appeals.

## DISCUSSION AND DECISION

## I.  Sufficiency of the Evidence

Thacker first contends that the State presented insufficient evidence to convict him of theft.  More particularly, Thacker claims that "there was no evidence presented to show that the Defendant himself had gone onto Dometic's property and took the coils." Appellant's Br. p. 6.

> In analyzing Thacker's claim, we apply this well-settled standard of review:
>
> When reviewing a claim of insufficient evidence, an appellate court neither reweighs the evidence nor judges the credibility of the witnesses as this is the exclusive province of the jury. We consider only the evidence most favorable to the State together with all reasonable and logical inferences which may be drawn therefrom. "If a reasonable finder of fact could determine from the evidence that the defendant was guilty beyond a reasonable doubt, then we will uphold the verdict."

Lyles v. State, 970 N.E.2d 140, 142 (Ind. 2012) (internal citations omitted).

To convict Thacker of class D felony theft, the State was required to prove that he "knowingly or intentionally exert[ed] unauthorized control over property of another person, with intent to deprive the other person of any part of its value or use."  Ind. Code § 35-43-4-2(a).  And Indiana Code section 35-41-2-2(b) provides that "[a] person engages in conduct 'knowingly' if, when he engages in the conduct, he is aware of a high probability that he is doing so."

7

Here, the evidence most favorable to the judgment is that Thacker went with three others to collect metal for scrapping on property that was not owned by any of the young boys. Tr. p. 90, 105, 123. Thacker admitted that he and Ward were caught in possession of refrigerator coils by a fork lift driver, who yelled at them to stop. Id. at 124. Although Thacker claims that they then dropped the coils and ran back to Ward's car empty-handed, two other witnesses testified that refrigerator coils were taken that day and ultimately unloaded into Ward's garage. Id. at 90-91, 105-08. A reasonable inference from these facts is that Thacker knowingly exerted unauthorized control over the refrigerator coils with the intention of depriving Dometic of their future use. Despite the varied accounts provided by the witnesses, it is the jury's province to weigh the evidence, and we cannot give credence to Thacker's requests that we engage in reweighing that evidence. Thus, Thacker's sufficiency claim fails.

## II. Double Jeopardy

Thacker's next claim is that his convictions for both theft and receiving stolen property violate Article I, Section 14 of the Indiana Constitution, which provides, "No person shall be put in jeopardy twice for the same offense." In interpreting this provision, our Supreme Court has said that "two or more offenses are the 'same offense' . . . if, with respect to either the statutory elements of the challenged crimes or the actual evidence used to convict, the essential elements of one challenged offense also establish the essential elements of another challenged offense." Richardson v. State, 717 N.E.2d 32, 49 (Ind. 1999).

Here, the State concedes that "the deputy prosecutor did instruct the jury that it could convict Defendant of both theft and receiving stolen property based on Defendant's acts of carrying the refrigerator coils away from the Dometic property."[4]  Appellee's Br. p. 9 (citing Tr. p. 136-39, 141).  Indeed, the State's brief avers, "[t]his argument does support Defendant's claim of double jeopardy."  Id.  We agree with the State and remand this cause to the trial court with instructions to vacate one of Thacker's convictions and the corresponding sentence.[5]

The judgment of the trial court is affirmed in part, reversed in part, and remanded with instructions.

MAY, J., and MATHIAS, J., concur.

---

[4] Indiana Code section 35-43-4-2(b) provides:  "A person who knowingly or intentionally receives, retains, or disposes of the property of another person that has been the subject of theft commits receiving stolen property, a Class D felony."

[5] Typically, we would direct the trial court to "vacate the conviction with the less severe penal consequences."  Richardson, 717 N.E.2d at 55.  However, because in this case both convictions are class D felonies for which the defendant was given equal concurrent sentences, we leave it to the discretion of the trial court to determine which conviction and sentence should be vacated on remand.